UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ROSE DESIO,<br>      Plaintiff(s),<br>v.<br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br>      Defendant(s). | Case No. 2:20-cv-01486-APG-NJK<br><br>**ORDER**<br><br>[Docket No. 66] |

Pending before the Court is Plaintiff's motion to supplement the complaint pursuant to Rule 15(d) of the Federal Rules of Civil Procedure. Docket No. 66. Defendant filed a response in opposition. Docket No. 72. Plaintiff filed a reply. Docket No. 75. The Court held a hearing on the motion on October 25, 2021. Docket No. 78. For the reasons discussed more fully below, the Court **DENIES** Plaintiff's motion to supplement the complaint.

**I.    MAGISTRATE JUDGE AUTHORITY**

Before turning to the substance of the motion, the Court begins by evaluating the undersigned's authority to resolve the matter. With respect to matters not enumerated in 28 U.S.C. § 636(b)(1)(A), courts determine a magistrate judge's authority based on whether the subject ruling is "dispositive" in nature and effect. *See, e.g.*, *Maisonville v. F2 Am., Inc.*, 902 F.2d 746, 747-48 (9th Cir. 1990). The Court herein denies Plaintiff's motion to supplement because modification of the scheduling order is not warranted. Plaintiff represents that such a ruling does not prevent her from pursuing this claim in a separate lawsuit. Docket No. 75 at 2-3. Hence, the Court's decision is akin to a denial of a motion to consolidate cases, which is not dispositive in nature. *See, e.g.*, *Carcaise v. Cemex, Inc.*, 217 F. Supp. 2d 603, 604 n.1 (W.D. Pa. 2002) (in denying motion to consolidate cases, concluding that a "magistrate judge has the authority to rule on the request to consolidate as a non-dispositive matter"); *Jackson v. Berkey*, No. 3:19-cv-06101-BHS-

DWC, 2020 WL 1974247, at *2 n.2 (W.D. Wash. Apr. 24, 2020) ("Motions to consolidate are considered non-dispositive and are within the pre-trial authority of the magistrate judge"). Accordingly, this ruling is within a magistrate judge's authority to issue.[1]

## II.   BACKGROUND

This lawsuit revolves around an insurance dispute. On August 23, 2019, Plaintiff was driving her Jeep Wrangler when she was injured in an accident. Docket No. 1-1 at ¶ 7.[2] Plaintiff alleges that her injuries resulted in roughly a quarter million dollars in past medical expenses, in addition to future medical expenses. Docket No. 1-1 at ¶¶ 8, 10. On or about January 9, 2020, State Farm tendered $50,000 in underinsured motorist benefits provided by the policy specific to the Jeep Wrangler. *Id.* at ¶ 21.

At the time of the accident, Plaintiff alleges that she was insured under four different State Farm policies, each of which include underinsured motorist coverage. *Id.* at ¶¶ 12-13. Plaintiff alleges that the accident triggered all four policies pursuant to Nevada law because each policy attaches to an individual as opposed to a particular vehicle. *See id.* at ¶ 14. Plaintiff further alleges that coverage could not be precluded on the grounds of any anti-stacking provision in light of State Farm's collection of premiums on each policy for the same risk. *See id.* at ¶¶ 15-20. On May 29, 2020, Plaintiff filed a complaint in state court on this "Stacking Claim." On August 10, 2020, State Farm removed the instant case based on diversity jurisdiction. Docket No. 1.

The underlying issue that the pending motion practice addresses is whether State Farm was required to increase the underinsured motorist coverage of $50,000/$100,000 to $100,000/$300,000 based on liability coverage limits for bodily injury (*i.e.*, a "Higher Limits" claim). On February 24, 2020, Plaintiff's counsel sent a letter referencing this issue:

---

[1] To the extent either party disagrees, that party is free to address the issue in an objection to the assigned district judge. *See Florence v. Stanback*, 607 F. Supp. 2d 1119, 1122 (C.D. Cal. 2009); *see also Bastidas v. Chappell*, 791 F.3d 1155, 1162 (9th Cir. 2015) (as part of waiver analysis, encouraging magistrate judges to advise litigants of the ability to object to a determination that a matter is non-dispositive).

[2] This section is derived largely from Plaintiff's allegations as stated in the complaint. As would be expected, Defendant does not agree with all of Plaintiff's positions. *See* Docket No. 13 (answer). The Court addresses Plaintiff's allegations and claims for purposes of background only.

2

> The Declarations Pages for the Honda Policy and the Chevy Policy show 100/300 in liability coverage and 50/100 in UIM benefits [coverage]. Thus, unless State Farm provides [Plaintiff] with an executed "drop down" form, the law requires that State Farm offer 100/300 UIM coverage on the subject policies.

Docket No. 72-1 at 3 n.1. Plaintiff then demanded that, absent providing such forms, State Farm tender underinsured motorist benefits based on the higher liability limits. *Id.* at 4. State Farm did not budge from the $50,000 amount that it had already tendered.

On May 29, 2020, Plaintiff filed her complaint without the allegations now in dispute regarding a Higher Limits claim. *Compare* Docket No. 1-1 *with* Docket No. 66-3.[3] On September 9, 2020, counsel engaged in a Rule 26(f) conference and agreed to a deadline to amend pleadings of December 2, 2020. *See* Docket No. 16 at 1-2. On September 14, 2020, the Court adopted the parties' proposed deadline and included it in the resulting scheduling order. Docket No. 17 at 2.

The deadline to amend expired as scheduled on December 2, 2020. On January 24, 2021, upon reviewing Defendant's summary judgment briefing, Plaintiff's counsel requested that State Farm provide him with the selection forms to determine whether an increase was required under the Higher Limits in the liability coverage for bodily injury. Docket No. 66-2 at 19-20. Plaintiff's counsel warned that the failure to issue payment would lead Plaintiff to move for leave to amend the complaint to add allegations with respect to a Higher Limits claim. *Id.* at 20.[4] On January 29, 2021, Plaintiff's counsel demanded that State Farm tender the additional $50,000 on or before February 2, 2021. Docket No. 66-2 at 16. Plaintiff's counsel warned that failure to do so would result in the filing of a motion for leave to amend to add allegations related to a Higher Limits claim. *Id.*

---

[3] Plaintiff argues that the Higher Limits issue is properly resolved through her pending motion for summary judgment and that this motion to supplement was filed in an abundance of caution. Docket No. 75 at 2. The Court addresses herein only whether supplementation is proper and expresses no opinion regarding the motion for summary judgment.

[4] Plaintiff now insists that she is seeking to supplement and not to amend. *See, e.g.*, Docket No. 66 at 5-7. "Parties and courts occasionally confuse supplemental pleadings with amended pleadings and mislabeling is common." 6A C.A. Wright, A.R. Miller, & M.K. Kane, Federal Practice and Procedure, § 1504 (3d ed.). Such mislabeling is generally unimportant given the similarity of the applicable standards. *See id.* The Court does not place importance on the fact that Plaintiff has been inconsistent in identifying the relief she seeks.

3

On February 9, 2021, the parties filed a stipulation to extend the deadlines in the scheduling order, including the expired deadline to amend. Docket No. 40. On February 17, 2021, the Court issued an order setting that stipulation for a hearing. Docket No. 41. The Court therein identified a number of deficiencies and areas of concern, including that the parties had to that point conducted no discovery and were seeking to reopen the deadline to amend or add parties without any indication of any need for such relief. *See id.* at 2.[5] On February 22, 2021, the Court held the hearing on the stipulation. Docket No. 43.[6] Most pertinent to the issues now before the Court, Plaintiff's counsel represented at that hearing that he did not believe Plaintiff needed to undertake any affirmative discovery, Hearing Rec. (Feb. 22, 2021) at 2:07 p.m., but that such understanding might change based on the discovery conducted by Defendant, *id.* at 2:08 p.m. When the Court specifically queried Plaintiff's counsel about any need to amend the pleadings, he identified none and speculated without elaboration that a need could arise in the future. *Id.* at 2:17 – 2:18 p.m. Although the Court granted relief with respect to some deadlines, the Court denied the request to reopen the amendment deadline given the failure to meet the applicable standards, the speculative nature of the need to alter the pleadings,[7] and the nonsensical nature of the request given that the proposed deadline was only a few days after the hearing at which Plaintiff's counsel represented that he had no current need to amend. *See* Hearing Rec. (Feb. 22, 2021) at 2:18 – 2:20 p.m.

On March 1, 2021, Plaintiff's counsel resumed his correspondence with State Farm, noting that State Farm had neither tendered the additional amount nor provided the requested selection forms. Docket No. 66-2 at 15. On March 3, 2021, Plaintiff's counsel again emailed defense

---

[5] These concerns echo those articulated when the Court denied without prejudice the previous iteration of the stipulation for failing to, *inter alia*, address the governing standards or sufficiently explain why the case should effectively start over from scratch. Docket No. 39 at 2.

[6] A transcript has not been prepared for the hearings on February 22, 2021, or on October 25, 2021. As such, the Court will cite herein to the audio recordings.

[7] "A party is not precluded from filing a motion for leave to amend solely because the deadline set forth in the scheduling order has lapsed." *Novotny v. Outback Steakhouse of Fla., LLC*, No. 2:16-cv-02716-RFB-NJK, 2017 U.S. Dist. Lexis 114672, at *2-3 (D. Nev. July 21, 2017). Instead, a motion filed after the deadline to amend must include a showing as to why the scheduling order should be modified in addition to whether the governing Rule 15 standards are met. *See id.* This was made clear in this case. Hearing Rec. (Feb. 22, 2021) at 2:19 p.m.; Docket No. 41 at 2 (citing *Novotny*, 2017 U.S. Dist. Lexis 114672, at *2-3).

counsel, now threatening to file a motion for summary judgment if action was not taken on the issue. *Id.* at 14. On March 18, 2021, defense counsel provided the selection forms. *Id.* at 8. On March 26, 2021, Plaintiff's counsel again demanded that State Farm tender the additional $50,000 on or before April 2, 2021, warning that failure to do so would result in the filing of a motion for summary judgment on the Higher Limits issue. *Id.* at 6-8. On April 5, 2021, Plaintiff's counsel sought a response from defense counsel. *Id.* at 4, 5. On April 15, 2021, Plaintiff's counsel sought a representation from State Farm that it would tender the additional $50,000, warning that failure to do so would result in the filing of a motion the following week. *Id.* at 2. On April 27, 2021, Plaintiff filed a motion for summary judgment addressing this issue. Docket No. 49. On May 26, 2021, Defendant filed a response to the motion for summary judgment, arguing that the motion was improper given the lack of any Higher Limits claim in the complaint. Docket No. 56 at 6-7.

On July 12, 2021, Plaintiff filed a motion for leave to "amend" the complaint pursuant to Rule 15(d) of the Federal Rules of Civil Procedure. Docket No. 62.[8] Given the expiration of the deadline to amend eight months earlier and its potential applicability to Plaintiff's motion, the Court denied the motion without prejudice to enable the parties to address which standards govern the motion and whether they are satisfied. Docket No. 65. On July 28, 2021, Plaintiff renewed the motion as one seeking to "supplement" the complaint pursuant to Rule 15(d). Docket No. 66. That is the motion currently before the Court.

### III. LEGAL STANDARDS

Requests to supplement a pleading are contemplated by Rule 15(d), which provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Hence, "Rule 15(d) provides a mechanism for parties to file additional causes of action based on facts that didn't exist when the original complaint was filed." *Eid v. Alaska Airlines, Inc.*, 621 F.3d 858, 874 (9th Cir. 2010). Rule

---

[8] Plaintiff relies in part on the state rule equivalent. *See* Docket No. 65 at 5 (quoting Nev. R. Civ. P. 15(d)); Docket No. 62 at 4 (same). Because the federal rules govern after removal, Fed. R. Civ. P. 81(c)(1), the Court applies Rule 15(d) of the Federal Rules of Civil Procedure. Discussion herein as to "Rules" refers to the Federal Rules of Civil Procedure.

15(d) also provides a mechanism by which persons "participating in these new events may be added if necessary." *Griffin v. Cnty. Sch. Bd. of Prince Edward Cnty.*, 377 U.S. 218, 227 (1964). "The purpose of Rule 15(d) is to promote as complete an adjudication of the dispute between the parties as possible." *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1057 (9th Cir. 1981). This rule is designed as "a tool of judicial economy and convenience" to "promote the economical and speedy disposition of the controversy." *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988). Hence, leave to permit supplemental pleadings is favored when it serves to promote judicial efficiency. *See Planned Parenthood of S. Ariz. v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997).

"Under Rule 15(d), the filing of a supplemental pleading is not available to the pleader as a matter of right." *United States ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1, 6 (1st Cir. 2015); *accord Kroll v. Incline Vill. Gen. Improvement Dist.*, 598 F. Supp. 2d 1118, 1124 (D. Nev. 2009). Whether to allow a supplemental pleading is entrusted to the broad discretion of the district court. *Keith*, 858 F.2d at 473; *see also Howard v. City of Coos Bay*, 871 F.3d 1032, 1040 (9th Cir. 2017). Rule 15(d) is to be liberally construed absent a showing of prejudice to the opposing party. *Keith*, 858 F.2d at 475; *see also La Salvia v. United Dairymen of Ariz.*, 804 F.2d 1113, 1119 (9th Cir. 1986). In addition to prejudice, courts commonly evaluate the propriety of a motion to supplement based on factors such as (1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure of previous amendments or supplements, and (4) futility. *Lyon v. U.S. Immigr. & Customs Enf't*, 308 F.R.D. 203, 214 (N.D. Cal. 2015).[9] "Courts also consider whether allowing leave to supplement would align with the goal of Rule 15(d), which is to promote judicial efficiency." *Id.* The party opposing supplementation bears the burden of establishing that denial would be appropriate on these grounds. *Nat'l Credit Union Admin. Bd. v. HSBC Bank U.S., Nat'l Ass'n*, 331 F.R.D. 63, 69 (S.D.N.Y. 2019).

---

[9] The standard for evaluating a motion to supplement brought under Rule 15(d) is the same as the standard for evaluating a motion to amend brought under Rule 15(a). *State of Cal. v. U.S. Dept. of Labor*, 155 F. Supp. 3d 1089, 1099 (E.D. Cal. 2016) (quoting *Yates v. Auto City 76*, 299 F.R.D. 611, 614 (N.D. Cal. 2013)).

When a motion requires by implication the modification of the scheduling order, however, the movant must first satisfy the "good cause" standard established by Rule 16(b). *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992); *see also* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent").[10] The good cause inquiry is focused on the movant's reasons for seeking to modify the scheduling order and primarily considers the movant's diligence. *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013). The key determination is whether the subject deadline "cannot reasonably be met despite the diligence of the party seeking the extension." *Johnson*, 975 F.2d at 609. The Court considers whether relief from the scheduling order is sought based on the development of matters that could not have been reasonably anticipated at the time the schedule was established. *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999). Courts may also consider other pertinent circumstances, including whether the movant was diligent in seeking modification of the scheduling order once it became apparent that the movant required relief from the deadline at issue. *Sharp v. Covenant Care LLC*, 288 F.R.D. 465, 467 (S.D. Cal. 2012). "The diligence obligation is ongoing" such that parties must "diligently attempt to adhere to [the deadlines in the scheduling order] throughout the subsequent course of the litigation." *Morgal v. Maricopa Cnty. Bd. of Supervisors*, 284 F.R.D. 452, 460 (D. Ariz. 2012). "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson*, 975 F.2d at 609.[11] The party seeking modification of the scheduling order bears the burden of establishing diligence. *Singer v. Las Vegas Athletic Clubs*, 376 F. Supp. 3d 1062, 1077 (D. Nev. 2019).

---

[10] When a request to modify the scheduling order is filed after that subject deadline has expired, the local rules require an additional showing of excusable neglect. Local Rule 26-3; *see also Branch Banking & Trust Co. v. D.M.S.I., LLC*, 871 F.3d 751, 764-65 (9th Cir. 2017). The Court need not reach the issue of excusable neglect here given the failure to establish good cause.

[11] Although prejudice to the opposing party may also be considered, the focus of the inquiry remains on the movant's reasons for seeking modification. *Johnson*, 975 F.2d at 609. "If that party was not diligent, the inquiry should end." *Id.*

## IV. ANALYSIS

Plaintiff's motion to supplement was filed after the deadline to amend expired. The Court will address whether the deadline to amend governs the instant motion to supplement and, if so, whether good cause has been established to modify the scheduling order.

### A. Applicability of Deadline to Amend and Rule 16(b)

The parties dispute as a threshold matter whether Plaintiff's motion to supplement requires modification of the scheduling order. There is no dispute that the motion to supplement was filed well after the deadline to amend expired. *See* Docket No. 17 at 2. Plaintiff argues that this deadline is inapplicable given that she is seeking to "supplement" her complaint rather than to "amend" it. Docket No. 66 at 5-7. Defendant counters that the Rule 16(b) analysis is triggered for motions to supplement filed after the deadline to amend has expired. Docket No. 72 at 8-10.

There is a split of authority as to whether a motion to supplement filed after a deadline to amend triggers the Rule 16(b) analysis. Several cases have found that it does not. Like Plaintiff does here, these courts have focused on the text of the governing rules and the scheduling order. *See, e.g.*, *Fremont Inv. & Loan v. Beckley Singleton, Chtd.*, No. 2:03-cv-1406-PMP-RJJ, 2007 WL 1213677, at *7 (D. Nev. Apr. 24, 2007). More specifically, Rule 15 separately identifies "amendments" and "supplemental pleadings," *compare* Fed. R. Civ. P. 15(a)-(c) *with* Fed. R. Civ. P. 15(d), but Rule 16 requires only that a deadline be set to "amend the pleadings" without reference to a deadline to supplement, Fed. R. Civ. P. 16(b)(3)(A).[12] In light of that omission from Rule 16(b)(3)(A), these courts have deduced that a scheduling order setting a deadline to amend must be treated as an issue separate from whether there is any deadline to supplement. *See, e.g.*, *Ohio Valley Env't Coal. v. U.S. Army Corps of Eng'rs*, 243 F.R.D. 253, 256 (S.D.W.V. 2007).

---

[12] Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15(d) provides that "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Rule 16(b)(3) provides that "[t]he scheduling order must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3).

Hence, these courts have determined that a motion to supplement is not subject to a deadline governing amendment.[13]

A separate line of cases has reached the opposite conclusion, however, requiring a showing of good cause to modify the scheduling order to supplement the pleadings after expiration of the deadline to amend. These courts have reached that conclusion based on a few different considerations. First, in direct contrast to the case law addressed above, some courts have concluded that the plain language in Rule 16(b)(3)(A) broadly "governs any pleading that serves to change or amend the previous pleading." *Fair Isaac Corp. v. Experian Info. Sols. Inc.*, Civil No. 06-4112 (ADM/JSM), 2009 WL 10677527, at *11 (D. Minn. Feb. 9, 2009). Second, some courts have highlighted the importance of judicial case management, expressing concern at the disruption of allowing supplementation at any time in the litigation—including after the close of discovery and shortly before trial—without a showing to justify that timing. *Pflaum v. Town of Stuyvesant*, No. 1:11-cv-335 (GTS/RFT), 2014 WL 12891533, at *5 (N.D.N.Y. Oct. 23, 2014). Third, some courts have held that Rule 16's good cause analysis is triggered for a motion to supplement based on the fact that it would require relief from other deadlines in the scheduling order, including the discovery cutoff. *Coalview Centralia, LLC v. TransAlta Centralia Mining LLC*, No. C18-5639-RSM, 2021 WL 2290842, *2 (W.D. Wash. June 4, 2021). Hence, these courts

---

[13] *See, e.g.*, *Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 36 n.10 (S.D.N.Y. 2016); *Ohio Valley*, 243 F.R.D. at 256; *Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist.*, No. EDCV 13-883 JGB (SPx), 2020 WL 5775174, at *4 (C.D. Cal. July 8, 2020); *Garrett v. Richardson*, No. 0:18-cv-1309-CMC-PJG, 2019 WL 2205751, at *2 n.3 (D.S.C. May 22, 2019); *Vargas v. Cnty. of Yolo*, No. 2:15-cv-02537-TLN-CKD, 2018 WL 3241406, at *3 (E.D. Cal. July 2, 2018); *Poly-Med, Inc. v. Novus Sci. Pte Ltd.*, No. 8:15-cv-01964-JMC, 2017 WL 2874715, at *4 (D.S.C. July 6, 2017); *Beckett v. Inc. Vill. of Freeport*, No. CV 11-2163 (LDW) (AKT), 2014 WL 1330557, at *6 (E.D.N.Y. Mar. 31, 2014); *Reyazuddin v. Montgomery Cnty., Md.*, Civil No. DKC 11-0951, 2012 WL 5193837, at *3 (D. Md. Oct. 18, 2012); *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, No. 09-cv-00970-PAB-KMT, 2011 WL 7627422, at *9 (D. Colo. Sept. 19, 2011), *adopted*, 2012 WL 1020939 (D. Colo. Mar. 26, 2012); *Watson v. Wright*, No. 08-cv-00960(A)(M), 2011 WL 1118608, at *5 (W.D.N.Y. Jan. 11, 2011), *adopted*, 2011 WL 1099981 (W.D.N.Y. Mar. 24, 2011); *Fremont Investment*, 2007 WL 1213677, at *7; *see also Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1192 (10th Cir. 2015) (*dicta* casting doubt on applicability of deadline to amend on motion to supplement).

have determined that a motion to supplement is subject to the scheduling order. This line of cases represents the majority approach.[14]

The Court is persuaded by the majority approach and similarly concludes that the deadline to amend applies to motions to supplement. As always, the Court begins its analysis with the text of the Federal Rules of Civil Procedure. *Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 540 (1991). Rule 16(b) does indeed refer to "amendment" while Rule 15 separately references "amendments" and "supplemental pleadings." Moreover, there is a technical distinction between amendment and supplementation in that the latter addresses events arising after the currently operative pleading was filed. *See* Fed. R. Civ. P. 15(d). Nonetheless, the Court is not persuaded that the Rules make a clear-cut distinction between the two for purposes of a scheduling order. Courts have routinely recognized that there is "little practical significance" to any distinction between amending and supplementing. *E.g.*, *Franks v. Ross*, 313 F.3d 184, 198 n.15 (4th Cir. 2002). Moreover, the United States Supreme Court, the Ninth Circuit, and other federal courts appear to have interpreted supplementation as a type of amendment. *See, e.g.*, *Griffin*, 377 U.S. at 227 (Rule 15(d) "plainly permits *supplemental amendments* to cover events happening after suit" (emphasis added)); *Howard*, 871 F.3d at 1040 (noting question of whether

---

[14] *See, e.g.*, *Shubert v. Town of Glastonbury*, No. 3:18-cv-00112 (MPS), 2020 WL 6395472, at *1 (D. Conn. Nov. 2, 2020); *Wilson v. Deutsche Bank Trust Co. Ams.*, No. 3:18-cv-0854-D, 2019 WL 5840325, at *16 (N.D. Tex. Nov. 7, 2019); *Kotler v. Bosco*, No. 9:17-cv-0394 (GTS/ML), 2019 WL 12291097, at *5 (N.D.N.Y. Nov. 4, 2019); *Jackson v. Calone*, No. 2:16-cv-00891-TLN-KJN, 2019 WL 4747811, at *3 (E.D. Cal. Sept. 30, 2019); *Nomadix, Inc. v. Guest-Tek Interactive Ent. Ltd.*, No. CV 16-08033-AB (FFMx), 2018 WL 10612577, at *1-2 (C.D. Cal. Apr. 3, 2018); *Slaughter v. Escamilla*, No. 3:16-cv-00457-MMD-WCG, 2018 WL 1470582, at *2-3 (D. Nev. Mar. 26, 2018); *Cole v. Educ. Credit Mgmt. Corp.*, No. ED CV 17-00974-JFW (SP), 2017 WL 8116538, at *1-2 (C.D. Cal. Oct. 13, 2017); *Murphy v. U.S. Forest Serv.*, No. 2:13-cv-02315-TLN-AC, 2016 WL 366434, at *3-4 (E.D. Cal. Feb. 1, 2016); *Pflaum*, 2014 WL 12891533, at *5; *Saratoga Potato Chips Co. v. Classic Foods, Inc.*, No. 1:12-cv-452, 2014 WL 2930495, at *3 (N.D. Ind. June 27, 2014); *Copeland v. Lane*, No. 5:11-cv-01058 EJD, 2013 WL 1899741, at *4-5 (N.D. Cal. May 6, 2013); *Jackson v. Odenat*, No. 09 Civ. 5583 (JFK)(AJP), 2012 WL 505551, at *2 (S.D.N.Y. Feb. 14, 2012); *Premier Tierra Holdings, Inc. v. Ticor Title Ins. Co. of Fla., Inc.*, No. 4:09-cv-2872, 2011 WL 13350243, at *1 (S.D. Tex. Sept. 8, 2011); *Concerned Citizens for a Safe Cmty. v. Office of Fed. Detention Trustee*, No. 09-cv-01409-DAE, 2011 WL 2971000, at *2 (D. Nev. July 19, 2011); *AT&T Mobility, LLC v. Digital Antenna, Inc.*, No. 09-60639-CIV, 2010 WL 3608247, at *2 (S.D. Fla. Sept. 9, 2010); *Poole v. City of Plantation, Fla.*, No. 05-61698-CIV, 2010 WL 1791905, at *32-33 (S.D. Fla. May 5, 2010); *Fair Isaac*, 2009 WL 10677527, at *11; *Infa-Lab, Inc. v. KDS Nail Int'l*, No. 2:07-cv-01270 WBS EFB, 2008 WL 4793305, at *1-2 (E.D. Cal. Oct. 27, 2008); *Aguayo v. Morehouse School of Medicine, Inc.*, No. 1:06-cv-1095-JOF, 2007 WL 9710273, at *3 (N.D. Ga. Dec. 10, 2007); *McGrotha v. FedEx Ground Package Sys., Inc.*, No. 5:05-cv-391 (CAR), 2007 WL 640457, at *2 (M.D. Ga. Feb. 24, 2007).

"the plaintiff could have *amended* her complaint in the midst of litigation to add claims which accrued after filing" by seeking permission to file a supplemental complaint pursuant to Rule 15(d) (emphasis added)); *LaSalvia*, 804 F.2d at 1119 (referring to a Rule 15(d) motion to add "post-complaint allegations" as seeking "amendment" of the complaint). Particularly given this understanding of supplementation as expressed by federal courts, the reference in Rule 16(b)(3)(A) to a deadline to "amend the pleadings" can be read as encompassing requests to supplement the pleadings. *Cf. Fair Isaac*, 2009 WL 10677527, at *11. Hence, this Court is not persuaded that the term "amend the pleadings" in Rule 16(b)(3)(A) by its plain meaning excludes efforts to supplement the pleadings.

An understanding that the deadline to amend encompasses motions to supplement is reenforced by the applicable advisory committee notes. *Cf. Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316 (1988) (while views expressed by the advisory committee are "not determinative" of a rule's meaning, they are "of weight" in the judicial construction of the rules). In particular, the advisory notes explain that the Rule 16(b)(3)(A)[15] deadlines for amending and adding parties were established to "assure[] that at some point both the parties and the pleadings will be fixed, by setting a time within which joinder of parties shall be completed and the pleadings amended." Fed. R. Civ. P. 16, Advisory Committee Notes (1983).[16] The expressed desire to solidify the pleadings

---

[15] The 1983 advisory notes refer to Rule 16(b)(1), which had been the home of the requirement to set a deadline "to join parties and to amend the pleadings."

[16] "An individual Rule must be construed as part of a procedural system, and the court's interpretation of the Rules as a whole must further the just, speedy, and inexpensive determination of every action." *City of Merced v. Fields*, 997 F. Supp. 1326, 1337 (E.D. Cal. 1998). Courts do not interpret the Federal Rules of Civil Procedure by viewing the governing language in isolation, but rather read the rules in the context of all pertinent provisions. *Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 123 (1989). Moreover, "[t]he Federal Rules of Civil Procedure, like any statute, must not be interpreted woodenly when the literal language leads to absurd results." *Light v. Wolf*, 816 F.2d 746, 748 (D.C. Cir. 1987). It is notable that Rule 16 requires a deadline not just to amend, but also to add parties, Fed. R. Civ. P. 16(b)(3)(A), and these deadlines expire simultaneously, *see* Local Rule 26-1(b)(2). Efforts to supplement encompass both adding new allegations or claims to the complaint and also joining new parties. *See Griffin*, 377 U.S. at 227. Hence, a motion to supplement to add new parties would on its face be subject to the scheduling order deadline, while Plaintiff argues that a motion to supplement to add new claims would not. Adopting Plaintiff's position could lead to cases in which new claims can be brought against existing parties, while important actors with respect to those same claims cannot be joined based on the timing of the motion to supplement. *But see id.* (indicating that adding new parties participating in new events to the existing case is allowed "to achieve an orderly and fair administration of justice"). Rather than interpret the rules as creating such incongruity, the better

and parties by imposing these deadlines runs contrary to Plaintiff's argument that the scheduling order does not apply to motions to supplement.

A finding that supplementing the pleadings is governed by the scheduling order's deadline to amend is also consistent with important policy considerations. As discussed above, a primary purpose for the Rule 16(b)(3)(A) deadlines is to ensure that "both the parties and the pleadings will be fixed." Fed. R. Civ. P. 16, Advisory Committee Notes (1983). A leading commentator has explained the reason for having these deadlines, along with the other deadlines set out in Rule 16(b)(3)(A), as follows:

> The rationale for requiring the scheduling order to fix these deadlines is clear: these are the core activities that are necessary to set the fundamental contours of the case and that often must be substantially completed before the court can determine whether the litigation can be concluded by dispositive motion and before the parties feel equipped to engage in productive settlement negotiations. It can be very difficult to efficiently manage a case without first knowing who the players are and what claims or defenses they will assert. So good judicial case managers press the parties to make commitments on these matters as early as feasible.

3 MOORE'S FEDERAL PRACTICE, § 16.13[1][a] (3d ed.). The Ninth Circuit has also repeatedly and emphatically addressed the importance of scheduling orders as tools for district courts to manage their heavy caseloads. *See, e.g.*, *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1027 (9th Cir. 2006); *Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005); *Janicki Logging Co. v. Mateer*, 42 F.3d 561, 566 (9th Cir. 1994); *Johnson*, 975 F.2d at 610-11. These same concerns apply with equal force to motions to supplement the pleadings filed late in the proceedings, as exempting motions to supplement from the scheduling order "would be thoroughly disruptive and eschew any effort at judicial economy" such that "chaos could rein over the orderly management of a case." *Pflaum*, 2014 WL 12891533, at \*5; *see also Chicago Reg. Council of Carpenters v. Vill. of Schaumburg*, 644 F.3d 353, 356-57 (7th Cir. 2011) (affirming denial of motion to supplement filed after dispositive motion practice because the district court "was well

---

approach is that the Rule 16(b)(3)(A) deadlines to "amend the pleadings" and to "join other parties" encompass requests to supplement the pleadings to add new claims and/or to add new parties. *Cf. Fair Isaac*, 2009 WL 10677527, at \*11.

within its rights to conclude that this was too little, too late").[17] These case management concerns are amplified by the fact that supplementing the pleadings may require modification of the discovery cutoff and other deadlines, as is the case here,[18] so it makes little sense to allow disruption of the established schedule for the proceedings without the required showing of good cause. *Cf. Coalview Centralia*, 2021 WL 2290842, *2.[19]

In light of the above, the Court concludes that motions to supplement the pleadings are governed by the deadline to amend. A motion to supplement the pleadings filed after that deadline implicitly seeks to modify the scheduling order, triggering the good cause analysis in Rule 16(b).

B.     Good Cause Analysis

Having determined that Plaintiff's motion to supplement is governed by the deadline to amend, the Court turns to analyzing whether good cause exists to modify that deadline. Plaintiff

---

[17] Some courts have noted that a need to supplement by its nature arises after the prior pleading was filed. *See Agua Caliente Band of Cahuilla Indians*, 2020 WL 5775174, at *4. The Court does not find justification in such reasoning to exempt motions to supplement from the scheduling order, as the need to amend should also generally arise after the prior pleading was filed. *See Jackson v. Bank of Haw.*, 902 F.2d 1385, 1388 (9th Cir. 1990) ("Relevant to evaluating the delay issue is whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading"). Moreover, applying the deadline to amend to a motion to supplement does not necessarily doom a later-filed motion; it merely triggers a requirement that the movant establish sufficient justification for modifying the scheduling order.

[18] The discovery cutoff expired on June 1, 2021, and the dispositive motion deadline expired on June 30, 2021. *See* Docket No. 43. Defendant posits that granting the motion to supplement would require reopening the discovery cutoff to conduct depositions, reopening the expert disclosure deadlines, and reopening the dispositive motion deadline. *See* Docket No. 72 at 15; *see also* Hearing Rec. (10/25/2021) at 1:26 - 1:27 p.m. Plaintiff did not present persuasive argument to the contrary.

[19] As an additional reason for treating supplementation as governed by the deadline to amend, the Court notes that it is not always self-evident whether a motion is appropriately considered one seeking an amendment or a supplementation. *Cf. Fair Isaac*, 2009 WL 10677527, at *10-11. This case serves as an example. On or about January 9, 2020, State Farm tendered $50,000 in underinsured motorist benefits. Docket No. 1-1 at ¶ 21. On February 24, 2020, Plaintiff demanded, *inter alia*, that State Farm pay the underinsured motorist coverage based on $100,000/$300,000 liability coverage unless State Farm provided executed "drop down" forms. Docket No. 72-1 at 3-4. State Farm did not budge on its $50,000 number, however, which prompted Plaintiff to file suit on May 29, 2020. Docket No. 1-1 at ¶ 22. Despite her prelitigation demand, Plaintiff insists that her current motion seeks to "supplement" the complaint based on her counsel's more recent demands for payment based on the Higher Limits. *See, e.g.*, Docket No. 66 at 8-9. Defendant counters that Plaintiff is really seeking to amend her complaint given that she could have pled a Higher Limits claim in her initial complaint. Hearing Rec. (10/25/2021) at 1:23 p.m. The Court need not engage in this technical parsing, however, because the deadline to amend applies to the pending motion regardless of the moniker Plaintiff attaches to it.

13

argues that good cause exists based on counsel's communications from January 24, 2021 to April 14, 2021, in which counsel demands additional payment based on a Higher Limits theory. *See* Docket No. 66 at 8-10; *see also* Docket No. 66-2 (email chain). Plaintiff also relies on the fact that State Farm disclosed the selection forms, which Plaintiff argues confirms her entitlement to the higher limit, on March 18, 2021. *See* Docket No. 66 at 8-9. Defendant counters that this was not a new issue at all, but rather Plaintiff's counsel knew the basis for a Higher Limits claim well before the complaint was filed. *See* Docket No. 72 at 11-13; *see also* Docket No. 72-1 at 3 n.1 (letter dated February 24, 2020). Particularly in light of that 2020 correspondence, Defendant argues that Plaintiff was not diligent in pursuing the supplementation by seeking leave 17 months later—after the expiration of the deadline to amend, after the discovery cutoff, and after the dispositive motion deadline. *See, e.g.*, Docket No. 72 at 11, 15. The Court agrees with Defendant.

It is undisputed that Plaintiff's counsel was aware of the Higher Limits issue as of at least February 24, 2020. Docket No. 72-1 at 3 n.1. Plaintiff proffers no explanation as to why she could not have sought leave to add the allegations now at issue in the nine and a half months prior to the deadline to amend. *See* Docket No. 17 at 2 (setting deadline to amend of December 2, 2020). Indeed, Plaintiff has not meaningfully explained why the initial complaint (filed on May 29, 2020) could not have encompassed this claim when it was filed. In light of these circumstances, Plaintiff fails to satisfy her burden on the most basic level of showing why the current deadline could not have been met.

Rather than tackle directly the timeline at issue, Plaintiff pins her showing of diligence on the fact that State Farm provided the selection forms on March 18, 2021. *See* Docket No. 66-2 at 8. The Court is not persuaded that this disclosure changes the outcome here. As a threshold matter, State Farm notes that Plaintiff obviously knew about the coverage in these policies based on her own records and had specifically demanded the higher limit absent production of selection forms showing otherwise. *See* Docket No. 72 at 11. Moreover, Plaintiff's prelitigation demand made clear her position that the Higher Limit was mandated unless State Farm provide an executed "drop down" form. Docket No. 72-1 at 3 n.1. Hence, it would appear from Plaintiff's own position that she need not obtain the forms prior to pursuing a claim, but rather the failure of State Farm to

14

provide the form would be sufficient to do so. As State Farm posits in this case, Plaintiff could have at a minimum pleaded her allegations regarding a Higher Limits claim in the initial complaint on information and belief. Hearing Rec. (10/25/2021) at 1:21 - 1:22 p.m. Such circumstances drastically undermine Plaintiff's current argument that obtaining the selection form was the critical moment in the timeline.

Even more significant, however, Plaintiff has not shown that she was diligent in obtaining those forms. Plaintiff first alluded to these forms on February 24, 2020. Docket No. 72-1 at 3 n.1. Plaintiff thereafter dropped the ball. Discovery opened in this matter on September 9, 2020. *See* Docket No. 16 at 1 (identifying date of Rule 26(f) conference as September 9, 2020); *see also* Fed. R. Civ. P. 26(d)(1). Plaintiff did not engage in any affirmative discovery. *See* Hearing Rec. (Feb. 22, 2021) at 2:07 p.m. Indeed, Plaintiff has not identified any efforts (formal or informal) to substantiate a Higher Limits claim between the letter on February 24, 2020, and the expiration of the deadline to amend on December 2, 2020.[20] It seems clear that the Higher Limits issue simply fell through the cracks during the interim period. Such circumstances weigh strongly against a finding of diligence since "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson*, 975 F.2d at 609.[21]

Plaintiff's assertion of diligence is also undermined by the delay in seeking leave to amend upon the completion of the demands made to State Farm in 2021. These discussions ended as of April 15, 2021, Docket No. 66-2 at 2, and Plaintiff filed a motion for summary judgment on the issue on April 27, 2021, Docket No. 49. Plaintiff did not move to supplement the pleadings at that

---

[20] Plaintiff's counsel began informally demanding the selection forms again on January 24, 2021. Docket No. 66-2 at 20. Plaintiff's counsel made this request only when his memory was jogged as to the Higher Limits issue by reviewing Defendant's summary judgment briefing. *See* Docket No. 66 at 3. Hence, the record is devoid of any efforts by Plaintiff to obtain these forms from February 24, 2020 to January 24, 2021.

[21] During this period, Plaintiff agreed to a discovery plan proposing a deadline to amend of December 2, 2020. Docket No. 16 at 2. Based on counsel's letter of February 24, 2020, it was foreseeable at that time that Plaintiff may desire to alter the pleadings to add allegations regarding the Higher Limit issue. This circumstance further undermines Plaintiff's assertion of diligence. *See Jackson*, 186 F.R.D. at 608 (courts may consider whether the failure to comply with a deadline arose from "the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference").

15

time, however. Had she done so, the granting of such request would have been less disruptive to the case schedule because neither discovery nor the dispositive motion deadline had yet expired. *See* Docket No. 43. Plaintiff instead waited for the summary judgment briefing to run its course before first seeking leave to supplement on July 12, 2021 (*i.e.*, after both the discovery cutoff and dispositive motion had expired). *See* Docket No. 62.

In short, the record shows that Plaintiff could have raised her allegations regarding the Higher Limit issue in her initial complaint, but she did not do so. Plaintiff then submitted a discovery plan proposing a deadline to amend of December 2, 2020, but she did not do anything in the interim to further uncover a basis to alter the pleadings with the Higher Limit issue by that deadline. Instead, after reviewing dispositive briefing, Plaintiff's counsel restarted communications with State Farm on the issue after the deadline to amend had expired. On March 18, 2021, Plaintiff obtained from State Farm the selection forms, but did not seek to supplement the pleadings for another four months. These circumstances do not establish diligence.

Accordingly, good cause is lacking to modify the scheduling order with respect to the deadline to amend.[22]

## V.  CONCLUSION

Plaintiff's motion to supplement requires sufficient justification to modify the scheduling order, but the motion fails to establish good cause to do so. Accordingly, the Court **DENIES** Plaintiff's motion to supplement.

IT IS SO ORDERED.

Dated: November 16, 2021

                                                                                              _____
                                                                                              Nancy J. Koppe
                                                                                              United States Magistrate Judge

---

[22] Because Plaintiff has failed to justify a modification of the scheduling order, the Court need not opine on whether the Rule 15(d) standards have been satisfied for supplementing.